```
 1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF GEORGIA
 2                         ATLANTA DIVISION


 3


 4
     UNITED STATES OF AMERICA      ) DOCKET NO. 1:10-CR-375-ODE
 5                                 )
                                   ) ATLANTA, GEORGIA
 6                                 ) OCTOBER 5, 2010
            V.                     )
 7                                 )
     ALLERGAN, INC.,               )
 8                                 )
            DEFENDANT.             )
 9


10
          TRANSCRIPT OF PLEA OF GUILTY AND SENTENCING HEARING
11             BEFORE THE HONORABLE ORINDA D. EVANS
                  SENIOR UNITED STATES DISTRICT JUDGE
12


13   APPEARANCES OF COUNSEL:

14   FOR THE GOVERNMENT:              RANDY CHARTASH
                                      DOUGLAS GILFILLAN
15                                    DAHIL GOSS

16   FOR THE DEFENDANT:               STEPHEN S. COWEN
                                      JOHN T. BENTIVOGLIO
17                                    PHYLLIS B. SUMNER
                                      MATTHEW H. BAUGHMAN
18                                    VICTORIA M. CALVERT

19


20   COURT REPORTER:                  ANDY ASHLEY
                                      1949 U. S. COURTHOUSE
21                                    ATLANTA, GEORGIA  30303-3361
                                      (404) 215-1478
22


23   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
     PRODUCED BY COMPUTER.
24

25
```

ANDRE G. ASHLEY, O.C.R.

```
 1                P R O C E E D I N G S

 2  (ATLANTA, FULTON COUNTY, GEORGIA; OCTOBER 5, 2010

 3  IN OPEN COURT.)

 4           THE COURT:  LADIES AND GENTLEMEN, IN THE CASE OF U.S.

 5  VERSUS ALLERGAN, AND I WOULD LIKE TO ASK IS THAT HOW YOUR

 6  CLIENT'S NAME IS PRONOUNCED, MR. COWEN?

 7           MR. COWEN:  YES, YOUR HONOR.

 8           THE COURT:  THIS IS A PLEA HEARING.  I HAVE A NUMBER

 9  OF PAPERS BEFORE ME.  I HAVE READ THE PROPOSED PLEA AGREEMENT

10  IN THE CASE.  I HAVE ALSO BEFORE ME THE INFORMATION CHARGING A

11  VIOLATION OF 21, U.S. CODE, SECTION 331(A) AND 352(F)(1).

12           I HAVE READ A PROPOSED CIVIL SETTLEMENT AGREEMENT

13  COVERING VARIOUS CIVIL CASES WHICH ARE BASICALLY ABOUT THE SAME

14  CONDUCT AS IS INVOLVED IN THIS CRIMINAL CASE.  I ALSO HAVE

15  BEFORE ME A CORPORATE INTEGRITY AGREEMENT.  ALSO MEMORANDA HAVE

16  BEEN FILED BY ALLERGAN AND THE GOVERNMENT IN SUPPORT OF THE

17  PLEA AGREEMENT, AND I'VE READ THOSE.

18           I DO REALIZE THE PLEA AGREEMENT JOINTLY SEEKS AN

19  AGREED UPON DISPOSITION OF THE CASE; NONETHELESS, WE WILL NEED

20  TO GO THROUGH THE NORMAL PLEA COLLOQUY.

21           I HAVE A COUPLE OF QUESTIONS FIRST.  THE CASE IN THE

22  DISTRICT OF COLUMBIA, IF I ACCEPT THIS PLEA TODAY WHEN WILL

23  THAT CASE BE DISMISSED?

24           MR. COWEN:  YOUR HONOR, I BELIEVE THAT CASE WOULD

25  BE -- THE JOINT STIPULATION MOTION WOULD THEN BE FILED I THINK
```

1 IN THE NEXT SEVERAL DAYS, AND THEN JUDGE BATES WOULD ENTER THE

2 ORDER OF DISMISSAL, AND THEN WE WOULD PROCEED TO THE DISMISSALS

3 OF THE CIVIL ACTIONS PENDING IN FRONT OF JUDGE DUFFEY.

4        THE COURT:  OKAY.  WELL, I NOTICED AS TO JUDGE

5 DUFFEY'S CASES THERE WAS A, I THINK, 7 DAY TIME WINDOW THAT WAS

6 EXPRESSED FOR THE DISMISSAL, BUT I DIDN'T SEE ANYTHING

7 ANALOGOUS FOR THE D.C. CASE AND THAT'S WHAT MADE ME ASK.

8        MR. COWEN:  I BELIEVE WITHIN THE CIVIL SETTLEMENT

9 AGREEMENT THERE'S A TIMEFRAME.  I BELIEVE IT'S TEN DAYS, BUT

10 THERE'S A CLOCK THAT STARTS TO RUN ON THAT SO THAT EVERYTHING

11 WILL FOLLOW IN DUE COURSE.

12        IF I CAN HAVE JUST A MOMENT?

13        THE COURT:  SURE.

14        (PAUSE IN THE PROCEEDINGS.)

15        MR. COWEN:  WE HAVE TO MAKE PAYMENTS -- WE PAY THE

16 FINE I BELIEVE WITHIN 10 DAYS, AND THEN WITHIN 7 DAYS OF MAKING

17 THE PAYMENT, WE FILE A STIPULATION OF DISMISSAL IN THE D.C.

18 LITIGATION, AND THEN I BELIEVE THE WAY THE CLOCK WORKS, THEN

19 THE PLAINTIFFS FILE THEIR DISMISSALS IN FRONT OF JUDGE DUFFEY.

20 SO IT IS ALL TIED TOGETHER THROUGH THE CIVIL SETTLEMENT

21 AGREEMENT.

22        THE COURT:  OKAY.  ALSO DO YOU ALL HAVE WITH YOU THE

23 CERTIFIED COPY OF THE BOARD OF DIRECTORS RESOLUTION?

24        MR. CHARTASH:  YES, YOUR HONOR, WE DO.

25        THE COURT:  ALL RIGHT.  DO YOU WANT TO GO AHEAD AND

1  PRESENT THAT NOW?

2           MR. CHARTASH:  YES, YOUR HONOR, IT IS -- GOOD

3  AFTERNOON, BY THE WAY, YOUR HONOR.

4           THE COURT:  GOOD AFTERNOON, MR. CHARTASH.

5           MR. CHARTASH:  AND IT IS A PLEASURE TO BE BEFORE YOU

6  AGAIN.

7           IT IS ATTACHED TO THE PLEA AGREEMENT.  IT IS

8  ATTACHMENT D TO THE PLEA AGREEMENT, BUT I'M HAPPY TO PROVIDE IT

9  TO YOU SEPARATELY.

10          THE COURT:  I'LL TAKE YOUR WORD FOR IT.  I HAVE NOT

11  SEEN IT, AND THE -- I BELIEVE THE COPIES OF THE CIVIL

12  SETTLEMENT AGREEMENT AND THE CORPORATE INTEGRITY AGREEMENT THAT

13  I HAVE ARE JUST COPIES OF A FULLY EXECUTED AGREEMENT IN EACH

14  CASE; IS THAT RIGHT?

15          MR. CHARTASH:  YES, YOUR HONOR.

16          THE COURT:  OKAY.

17          MR. CHARTASH:  YOUR HONOR, THE CIVIL SETTLEMENT

18  AGREEMENT IS ALSO ATTACHED AS AN ATTACHMENT, BUT THE CORPORATE

19  INTEGRITY AGREEMENT WHILE REFERENCED IN THE PLEA AGREEMENT IS

20  NOT A SEPARATE ATTACHMENT.  HOWEVER, GIVEN THAT IT IS INTEGRAL,

21  WE HAVE MADE IT A SEPARATE EXHIBIT AND WOULD LIKE TO PRESENT IT

22  AS WELL AND MAKE IT PART OF THE RECORD.

23          THE COURT:  ALL RIGHT.   LET'S GO ON AND DO THAT NOW.

24          MR. CHARTASH:  OKAY.  YOUR HONOR, I HAVE THE

25  CORPORATE INTEGRITY AGREEMENT IN THIS CASE UNITED STATES VERSUS

ANDRE G. ASHLEY, O.C.R.

1  ALLERGAN.  LET ME SHOW IT TO COUNSEL.

2           YOUR HONOR, I WOULD TENDER IT TO THE COURT AND MAKE

3  IT AN EXHIBIT FOR THE GOVERNMENT.

4           THE COURT:  ALL RIGHT.  WE'LL MAKE THAT A PART OF THE

5  RECORD.

6           LADIES AND GENTLEMEN, LET'S GO AHEAD WITH THE PLEA

7  THEN.  WOULD YOU ALL COME ON UP TO THE PODIUM, MR. CHARTASH,

8  MR. COWEN, THE CORPORATE REPRESENTATIVE?

9           MR. COWEN:  YOUR HONOR, MAY I INTRODUCE SAMUEL GESTEN

10  WHO'S AN EXECUTIVE VICE-PRESIDENT AND GENERAL COUNSEL OF

11  ALLERGAN.  HE ARRIVED AT THE COMPANY IN 2009 SO DOES NOT HAVE

12  PERSONAL KNOWLEDGE OF ACTUAL FACTS, AND, THEREFORE, IF THE

13  COURT HAS QUESTIONS ABOUT THE FACTS, I WOULD HOPE THAT I COULD

14  ADDRESS THOSE.

15           THE COURT:  WE'LL SEE.

16           MR. GESTEN:  GOOD AFTERNOON, YOUR HONOR.

17           THE COURT:  HOW ARE YOU?

18           MR. GESTEN:  WELL, THANK YOU.

19           THE COURT:  HOW DO YOU SPELL YOUR NAME?

20           MR. GESTEN:  G E S T E N.

21           THE COURT:  MR. CHARTASH, GO AHEAD.

22           MR. CHARTASH:  THANK YOU, YOUR HONOR.  YOUR HONOR, I

23  HAVE HERE THE GUILTY PLEA AND PLEA AGREEMENT, AND THIS IS A

24  PROPOSED BINDING PLEA TO THE COURT.

25           LET ME SHOW YOU, MR. GESTEN, AS REPRESENTATIVE OF THE

1   COMPANY ON PAGE 12 IS THAT YOUR SIGNATURE?

2           MR. GESTEN:  YES.

3           MR. CHARTASH:  MR. COWEN, AS COUNSEL FOR THE COMPANY

4   IS THAT YOUR SIGNATURE?

5           MR. COWEN:  YES, IT IS.

6           MR. CHARTASH:  YOUR HONOR, THERE IS ANOTHER SIGNATURE

7   HERE OF MR. BENTIVOGLIO.  MR. BENTIVOGLIO, IS THAT IN FACT YOUR

8   SIGNATURE.

9           MR. BENTIVOGLIO:  YES, IT IS.

10          MR. CHARTASH:  THANK YOU.  YOUR HONOR, MY SIGNATURE

11  AND -- IF I MAY FOR JUST A SECOND, I WAS A LITTLE REMISS IN NOT

12  INTRODUCING AUSA DOUG GILFILLAN --

13          THE COURT:  HOW ARE YOU?

14          MR. CHARTASH:  -- WHO IS HERE AS WELL, AND AT COUNSEL

15  TABLE IS SCOTT STEPHENS FROM THE FBI, PAM CHAMBERS FROM THE FDA

16  AND PATTY MURRAY FROM HHS.

17          THE COURT:  GOOD AFTERNOON.  MR. COWEN.

18          MR. COWEN:  NOW IF I MAY, SINCE I WAS EQUALLY REMISS,

19  OF COURSE, YOUR HONOR KNOWS PHYLLIS SUMNER.

20          THE COURT:  I DO.

21          MR. COWEN:  ALSO MY PARTNER, AND THEN MY PARTNER MATT

22  BAUGHMAN AND THEN VICTORIA CALVERT FROM OUR FIRM AND OF COURSE

23  MR. JOHN BENTIVOGLIO FROM SKADDEN ARPS.

24          THE COURT:  GOOD AFTERNOON.

25          MR. CHARTASH:  YOUR HONOR, ON PAGE 14, MR. GESTEN, IS

1  THAT YOUR SIGNATURE?

2          MR. GESTEN:  YES.

3          MR. CHARTASH:  MR. COWEN, IS THAT YOUR SIGNATURE?

4          MR. COWEN:  YES.

5          MR. CHARTASH:  AND I'LL GO BACK TO MR. BENTIVOGLIO

6  ONE MORE TIME; IS THAT YOUR SIGNATURE?

7          MR. BENTIVOGLIO:  YES.

8          MR. CHARTASH:  THANK YOU.  YOUR HONOR, THIS IS THE

9  PLEA OF GUILTY AND PLEA AGREEMENT BETWEEN THE PARTIES.

10 ATTACHED TO IT, YOUR HONOR, IS ALSO THE SETTLEMENT AGREEMENT

11 THAT I BELIEVE YOUR HONOR DOES HAVE A COPY OF.  IT'S ATTACHMENT

12 A.

13         WE ALSO, YOUR HONOR, HAVE THE CORPORATE INTEGRITY --

14 I'M SORRY, NOT THE CORPORATE INTEGRITY AGREEMENT, WE ALREADY

15 DID THAT, BUT THE BOARD OF DIRECTORS RESOLUTION, AND THIS

16 RESOLUTION STATES THAT RESOLVED THAT THE BOARD OF DIRECTORS OF

17 ALLERGAN, INC., A DELAWARE CORPORATION, AFFIRM THAT IT IS OF

18 THE AUTHORITY TO ENTER INTO THE PLEA AGREEMENT WITH THE UNITED

19 STATES ATTORNEY'S OFFICE FOR THE NORTHERN DISTRICT OF GEORGIA,

20 AND THEY HAVE REVIEWED THE CRIMINAL INFORMATION, CONSULTED WITH

21 LEGAL COUNSEL IN CONNECTION WITH THE MATTER, VOTED TO ENTER

22 INTO THE PROPOSED PLEA AGREEMENT AND VOTED TO AUTHORIZE

23 ALLERGAN TO PLEAD GUILTY TO THE CHARGES SPECIFIED IN THE PLEA

24 AGREEMENT, YOUR HONOR, AND, FIVE, VOTED TO AUTHORIZE MR. GESTEN

25 AS ALLERGAN'S EXECUTIVE VICE-PRESIDENT, GENERAL COUNSEL AND

1  ASSISTANT SECRETARY TO EXECUTE THE PLEA AGREEMENT AND ALL OTHER

2  DOCUMENTS NECESSARY.

3          I WILL TENDER THAT TO THE COURT RIGHT NOW.

4          (MR. GESTEN WAS SWORN)

5          THE COURT:  MR. GESTEN, I'M JUDGE EVANS.  I'M SURE

6  YOU'VE DISCUSSED THIS MATTER IN SOME DETAIL WITH YOUR COUNSEL

7  BEFORE COMING TO COURT TODAY AND BEFORE EXECUTING ALL THESE

8  DOCUMENTS.

9          HOWEVER, THE LAW DOES REQUIRE THAT I PERSONALLY

10  DISCUSS WITH ALLERGAN ITS DECISION TO PLEAD GUILTY IN THIS CASE

11  BEFORE I CAN ACCEPT THE PLEA.  I'M REQUIRED TO MAKE SURE THAT

12  ALLERGAN KNOWS ITS RIGHTS, THAT THE GUILTY PLEA IS VOLUNTARY

13  AND THAT THERE IS A FACTUAL BASIS FOR THE PLEA BEFORE I CAN

14  ACCEPT IT.

15          DO YOU UNDERSTAND WHAT I SAID?

16          MR. GESTEN:  YES, YOUR HONOR.

17          THE COURT:  ARE YOU THE AUTHORIZED REPRESENTATIVE OF

18  ALLERGAN HERE TODAY?

19          MR. GESTEN:  YES, YOUR HONOR.

20          THE COURT:  OKAY.  NOW, AS I SAID, I DO HAVE BEFORE

21  ME THE PLEA AGREEMENT IN THIS CASE, BUT I DO WANT TO GO OVER A

22  FEW PRELIMINARY MATTERS.

23          YOU REALIZE THAT ALLERGAN HAS NO OBLIGATION TO PLEAD

24  GUILTY IN THIS CASE, DON'T YOU?

25          MR. GESTEN:  YES, YOUR HONOR.

1          THE COURT:  AND IF IT DIDN'T, THEN THIS CASE WOULD GO

2   ON TO TRIAL, CORRECT?

3          MR. GESTEN:  I'M AWARE OF THAT, YOUR HONOR.

4          THE COURT:  ALLERGAN WOULD BE ABLE TO BE REPRESENTED

5   AT TRIAL BY AN ATTORNEY OF ITS CHOICE, CORRECT?

6          MR. GESTEN:  YES, YOUR HONOR.

7          THE COURT:  ALLERGAN WOULD BE ABLE TO SUBPOENA

8   WITNESSES TO TESTIFY AT THE TRIAL.  IT WOULD BE ABLE TO

9   CROSS-EXAMINE THE GOVERNMENT'S WITNESSES.  IT WOULD BE REQUIRED

10  AT SUCH A TRIAL THAT THE CHARGES BE PROVEN BEYOND A REASONABLE

11  DOUBT OR THE JURY WOULD FIND ALLERGAN NOT GUILTY.

12          DO YOU UNDERSTAND THAT?

13          MR. GESTEN:  YES, YOUR HONOR.

14          THE COURT:  NOW BY PLEADING GUILTY HERE TODAY,

15  ALLERGAN IS GIVING UP ITS RIGHT TO A TRIAL.  DO YOU UNDERSTAND

16  THAT?

17          MR. GESTEN:  YES, YOUR HONOR.

18          THE COURT:  NOW, THIS IS A PARTICULAR TYPE OF PLEA

19  AGREEMENT.  IT DOES CALL FOR THE COURT TO IMPOSE A PARTICULAR

20  SENTENCE.  HOWEVER, IT DOES RESERVE TO ME THE RIGHT TO GIVE A

21  DIFFERENT SENTENCE IF I FEEL THAT'S APPROPRIATE UNDER THE

22  CIRCUMSTANCES OF THE CASE, AND IN SUCH AN EVENT, ALLERGAN WOULD

23  BE ABLE TO WITHDRAW ITS GUILTY PLEA.

24          DO YOU UNDERSTAND THAT?

25          MR. GESTEN:  YES, YOUR HONOR.

1          THE COURT:  ALL RIGHT.  NOW I JUST WANT TO GO OVER

2    BRIEFLY WHAT THE RANGE OF POSSIBLE PENALTIES IS IN THIS CASE.

3    THE STATUTE INVOLVED WOULD ALLOW A MAXIMUM FINE OF AS MUCH AS

4    200,000 DOLLARS OR TWICE THE GROSS PECUNIARY GAIN DERIVED FROM

5    THE CRIME OR TWICE THE GROSS PECUNIARY LOSS CAUSED TO THE

6    VICTIMS OF THE CRIME, WHICHEVER IS LARGER.

7          ALSO, THE COURT COULD IMPOSE A TERM OF PROBATION ON

8    ALLERGAN OF NOT MORE THAN FIVE YEARS.  I WILL IMPOSE A 125

9    DOLLAR SPECIAL ASSESSMENT, AND THE COURT CAN REQUIRE FORFEITURE

10   OF ALL MISBRANDED DRUGS INVOLVED IN THE OFFENSE OR SUBSTITUTE

11   ASSETS.

12         DO YOU UNDERSTAND THAT'S THE RANGE OF POSSIBLE

13   PENALTIES IN THIS CASE?

14         MR. GESTEN:  YES, I DO, YOUR HONOR.

15         THE COURT:  ALLERGAN IS CHARGED, AS I SAID, WITH A

16   VIOLATION OF 21, USC, SECTION 331(A) AND 352(F)(1).  DO YOU

17   UNDERSTAND THE NATURE OF THAT CHARGE?

18         MR. GESTEN:  YES, I DO, YOUR HONOR.

19         THE COURT:  HAS THE GOVERNMENT PROMISED ALLERGAN

20   ANYTHING OTHER THAN WHAT IS IN THE PLEA AGREEMENT?

21         MR. COWEN:  YOUR HONOR, IF I MAY, WITH REGARD TO THE

22   DEPARTMENT OF JUSTICE PROMISES, NO, EVERYTHING IS ENCOMPASSED

23   INCLUDING THE CRITICAL AGREEMENT TO CLOSE THEIR INVESTIGATION.

24         THIS IS A COMPLEX, GLOBAL SETTLEMENT.  WE HAVE OTHER

25   AGREEMENTS INCLUDING ORAL AND E-MAIL EXCHANGES WITH THE OFFICE

1 OF INSPECTOR GENERAL. I DO NOT WANT THOSE WIPED OUT BY THE

2 INTEGRATION CLAUSE OF THE PLEA AGREEMENT, BUT THOSE ARE NOT

3 AGREEMENTS WITH THE DEPARTMENT OF JUSTICE.

4        THE COURT: OKAY. WELL, WHEN I SAY THE GOVERNMENT,

5 I'M TALKING ABOUT THE DEPARTMENT OF JUSTICE.

6        OKAY. SO YOUR ANSWER WAS NO, CORRECT?

7        MR. GESTEN: CORRECT.

8        MR. COWEN: AS TO THE DEPARTMENT OF JUSTICE HERE IN

9 THE NORTHERN DISTRICT OF GEORGIA, YES.

10        THE COURT: ARE YOU SATISFIED WITH THE SERVICES OF

11 YOUR COUNSEL IN THIS CASE?

12        MR. GESTEN: YES, YOUR HONOR.

13        THE COURT: LONG PAUSE THERE. JUST KIDDING.

14        MR. CHARTASH, IF THIS CASE WENT TO TRIAL, WHAT WOULD

15 THE GOVERNMENT'S EVIDENCE SHOW ON THE INFORMATION?

16        MR. CHARTASH: THANK YOU, YOUR HONOR.

17        THE COURT: AND LET ME SAY THIS. I HAVE READ THE

18 OFFER IN THE PAPERS THAT YOU ALL HAVE FILED, AND IT'S QUITE

19 EXTENSIVE. SO I AM LOOKING FOR SOMETHING A LITTLE MORE

20 CONDENSED THAN THAT.

21        MR. CHARTASH: OKAY. FAIR ENOUGH. IF I MAY START

22 WITH THE ELEMENTS OF THE CRIME OF MISBRANDING? YOUR HONOR, THE

23 GOVERNMENT WOULD HAVE TO PROVE THAT BOTOX IS IN FACT A DRUG AND

24 A BIOLOGIC, THAT THE DRUG OR BIOLOGIC IS MISBRANDED IN THAT IT

25 LACKED ADEQUATE DIRECTIONS FOR USES INTENDED BY ALLERGAN AND

1   THAT BOTOX WAS INTRODUCED.

2         YOUR HONOR, AS YOUR HONOR HAS NOTED, WE HAVE PROVIDED

3   YOUR HONOR AN EXTENSIVE FACTUAL BASIS IN OUR SENTENCING MEMO SO

4   WE'D INCORPORATE THAT AS WELL, BUT DURING THE RELEVANT PERIOD

5   OF TIME, YOUR HONOR, SET FORTH IN THE CRIMINAL INFORMATION,

6   ALLERGAN MANUFACTURED AND DISTRIBUTED BOTOX.

7         BOTOX, AS YOUR HONOR HAS READ, IS A PURIFIED

8   NEUROTOXIN WHICH ALLERGAN PROMOTED AND MARKETED FOR THERAPEUTIC

9   USES BY PHYSICIANS.  BOTOX IS IN FACT A DRUG WITHIN THE MEANING

10  OF THE FOOD, DRUG AND COSMETIC ACT.  IT IS ALSO, YOUR HONOR, A

11  BIOLOGICAL PRODUCT WITHIN THE MEANING OF THE PUBLIC HEALTH

12  SERVICE ACT.

13        PURSUANT TO THE FOOD, DRUG AND COSMETIC ACT SHIPMENTS

14  OF A DRUG IN INTERSTATE COMMERCE MUST BE ACCOMPANIED BY

15  LABELING BEARING ADEQUATE DIRECTIONS FOR USE.

16        THE REGULATIONS DEFINE, YOUR HONOR, ADEQUATE

17  DIRECTIONS FOR USE, AND BRIEFLY THE DEFINITION BY THE FOOD AND

18  DRUG ADMINISTRATION MEANS THAT DIRECTIONS UNDER WHICH A LAYMAN

19  CAN USE THE DRUG SAFELY AND FOR THE PURPOSE FOR WHICH IT WAS

20  INTENDED.  THE MEANING OF INTENDED USE, AS I SAID, IS SET OUT

21  IN 21 CFR 201.128.

22        IN 1989, YOUR HONOR, BOTOX WAS APPROVED BY THE FDA

23  FOR TREATING STRABISMUS, CROSS-EYED; AND BLEPHAROSPASM,

24  EXCESSIVE BLINKING OF THE EYES, YOUR HONOR.  IN 2000 THE FDA

25  APPROVED BOTOX FOR THE TREATMENT OF CERVICAL DYSTONIA.  IN 2004

1   THE FDA APPROVED BOTOX FOR THE TREATMENT OF SEVERE PRIMARY

2   HYPERHIDROSIS, EXCESS SWEATING.

3           BETWEEN 2000 AND -- JANUARY OF 2000 AND 2005, YOUR

4   HONOR, ALLERGAN'S MARKETING AND PROMOTION OF BOTOX RESULTED IN

5   CERTAIN INTENDED USES AS THAT TERM IS DEFINED BY THE FDA FOR

6   THE TREATMENT OF OFF-LABEL INDICATIONS, HEADACHE, PAIN,

7   SPASTICITY AND JUVENILE CEREBRAL PALSY.

8           BECAUSE BOTOX' LABEL DID NOT BEAR ADEQUATE DIRECTIONS

9   FOR THESE INTENDED USES TO WHICH IT HAD PROMOTED AND MARKETED

10  BOTOX, THESE OFF-LABEL USES CAUSED BOTOX TO IN FACT BE

11  MISBRANDED UNDER THE FOOD, DRUG AND COSMETIC ACT.

12          DURING THE RELATIVE PERIOD OF TIME, YOUR HONOR,

13  ALLERGAN CAUSED BOTOX TO BE SHIPPED IN INTERSTATE COMMERCE.

14  BRIEFLY, YOUR HONOR, HOW DID THEY EXACTLY DO THAT?  ONE,

15  ALLERGAN WAS CERTAINLY AWARE OF THE PROHIBITIONS AGAINST

16  OFF-LABEL USE.  IN THEIR FIELD REFERENCE GUIDE IT TALKS ABOUT

17  THE PROHIBITION.  IN ALLERGAN'S SEC 10K ANNUAL REPORT, IT ALSO

18  TALKS ABOUT THE PROHIBITIONS.

19          THE CONDITIONS TO WHICH BOTOX WAS APPROVED WERE VERY,

20  VERY RARE.  CERVICAL DYSTONIA AMONG THE FOUR WAS THE LARGEST,

21  AND THAT, YOUR HONOR, IS .0009 PERCENT OF THE POPULATION -- THE

22  PREVALENCE OF THAT IS .0009 IN THE U.S. POPULATION.  THAT MEANS

23  IN A POPULATION OF 300 MILLION PEOPLE, APPROXIMATELY 25,000

24  PEOPLE SUFFER FROM CERVICAL DYSTONIA, A VERY SERIOUS AND

25  DEBILITATING CONDITION, YOUR HONOR.


                    ANDRE G. ASHLEY, O.C.R.

1        BUT NOTWITHSTANDING THE NARROW AND LIMITED USES FOR

2   BOTOX THAT WERE APPROVED BY THE FDA, ALLERGAN MADE IT A TOP

3   CORPORATE PRIORITY TO MAXIMIZE THE SALES OF BOTOX FOR OFF-LABEL

4   USAGE FOR HEADACHE, PAIN AND SPASTICITY.  ALLERGAN'S OFF-LABEL

5   MARKETING TACTICS INCLUDED CALLING ON DOCTORS WHO TYPICALLY

6   TREAT PATIENTS WITH OFF-LABEL CONDITIONS.

7        ALLERGAN HELD WORKSHOPS TO TEACH DOCTORS AND THEIR

8   OFFICE STAFF HOW TO BILL FOR OFF-LABEL USES, CONDUCTED DETAIL

9   AUDITS OF DOCTOR BILLING RECORDS TO DEMONSTRATE HOW THEY COULD

10  MAKE MONEY BY INJECTING BOTOX FOR OFF-LABEL USES, OPERATED THE

11  BOTOX REIMBURSEMENT HOTLINE WHICH PROVIDED A WIDE ARRAY OF FREE

12  ON-DEMAND SERVICES TO DOCTORS FOR OFF-LABEL USES.

13       ALLERGAN ALSO LOBBIED GOVERNMENT HEALTH CARE PROGRAMS

14  TO EXPAND COVERAGE FOR OFF-LABEL USES, DIRECTED AND CONTROLLED

15  PHYSICIAN WORKSHOPS AND DINNERS FOCUSED ON OFF-LABEL USES, PAID

16  DOCTORS TO ATTEND ADVISORY BOARDS PROMOTING OFF-LABEL USES AND

17  CREATED A PURPORTEDLY INDEPENDENT NEUROTOXIN EDUCATION

18  ORGANIZATION TO STIMULATE USE OF BOTOX FOR OFF-LABEL

19  INDICATIONS WHEN IT WASN'T INDEPENDENT.

20       AGAIN, YOUR HONOR, WE CAN GO ON FOR QUITE SOME TIME,

21  AND WE HAVE INDEED, YOUR HONOR, IN OUR SENTENCING MEMO AND PLEA

22  MEMO ARTICULATED AND WE WOULD INCORPORATE ALL THOSE FACTS INTO

23  THIS, BUT THAT'S WHAT GOVERNMENT WOULD PROVE IF THIS CASE WERE

24  TO GO TO TRIAL.

25       THE COURT:  MR. COWEN, IS THAT AN ACCURATE RECITATION

ANDRE G. ASHLEY, O.C.R.

1    OF WHAT THE GOVERNMENT'S EVIDENCE WOULD SHOW?

2              MR. COWEN:  YOUR HONOR, IF I MAY, ALLERGAN AGREES

3    WITH THEIR DESCRIPTION OF THE ELEMENTS OF THE OFFENSE AND THAT

4    ALLERGAN IS GUILTY OF THE MISBRANDING CHARGE.

5              WE DON'T AGREE WITH MANY OF THE SPECIFICS THAT MR.

6    CHARTASH JUST SUMMARIZED, MUCH LESS ALL THAT DETAIL AND

7    NARRATIVE IN THE INFORMATION AND THEN THE EVEN LONGER

8    SENTENCING MEMORANDUM, BUT WE AGREE THAT THE GOVERNMENT COULD

9    PROVE THAT ALLERGAN IS GUILTY OF THE MISBRANDING CHARGE.

10             THE COURT:  WELL, DO YOU AGREE THAT -- DO YOU BELIEVE

11   THAT THE GOVERNMENT WOULD BE ABLE TO OFFER PROOF AT TRIAL THAT

12   WOULD SUPPORT WHAT MR. CHARTASH SAID?

13             MR. COWEN:  ROUGHLY SPEAKING THE FIRST PART OF WHAT

14   MR. CHARTASH SAID LEADING UP TO WHERE HE SAID ALLERGAN IN FACT

15   MISBRANDED THE DRUG AND SHIPPED IT IN INTERSTATE COMMERCE

16   INCLUDING INTO THE NORTHERN DISTRICT OF GEORGIA, YES, YOUR

17   HONOR.  I THINK WE WOULD HAVE QUITE A CONTEST OVER MANY OF THE

18   OTHER ALLEGATIONS AND --

19             THE COURT:  WELL, WHAT ABOUT THE GENERAL ALLEGATION

20   THAT THE INSTRUCTIONS, THE LABELING THAT WENT ALONG WITH THE

21   DRUG IT WAS SO GENERAL THAT IT DID NOT DIRECT USERS TO THE

22   SPECIFIC USES THAT HAD BEEN APPROVED?

23             MR. COWEN:  THEY CAN PROVE THAT IT DID NOT HAVE

24   ADEQUATE DIRECTIONS FOR USE BECAUSE OF THE WAY THAT PHRASE IS

25   DEFINED VERY BROADLY BY THE FDA.


                    ANDRE G. ASHLEY, O.C.R.

1          THE COURT:  AND WHEN YOU ALL SAY MISBRANDING YOU'RE

2     TALKING ABOUT DRUGS THAT CAME WITH INSTRUCTIONS OR DIRECTIONS

3     FOR USE THAT WERE NOT REALLY AS SPECIFIC AS THE USES THAT THE

4     DRUG HAD BEEN APPROVED FOR?

5          MR. COWEN:  IF I MAY --

6          THE COURT:  AS I UNDERSTAND IT THAT'S THE HEART OF

7     THE GOVERNMENT'S CASE.

8          MR. COWEN:  WHAT'S DIFFICULT ABOUT THE HEART IS THAT

9     THE GOVERNMENT'S INFORMATION -- SOME OF WHAT MR. CHARTASH SAID

10    REFERENCES OFF-LABEL MARKETING, BUT THERE IS NO STATUTE OR

11    REGULATION THAT TALKS ABOUT OFF-LABEL MARKETING.  THE TERM IS A

12    COLLOQUIALISM.

13         THE MISBRANDING IS THE OFFENSE WHICH IS SHIPPING A

14    DRUG WITHOUT ADEQUATE DIRECTIONS FOR THE USES THAT ARE

15    INTENDED, AND THEN THE WAY UNDER THE FDA REGULATION INTENDED

16    USE IS DEFINED IT'S VERY, VERY BROAD.  SO IF A MANUFACTURER

17    KNOWS THAT ITS DRUG IS GOING TO BE USED FOR A PURPOSE OTHER

18    THAN THE APPROVED PURPOSES ON THE LABEL, THE MANUFACTURER UNDER

19    THAT REGULATION CAN BE GUILTY OF A MISBRANDING OFFENSE, AND SO

20    THE GOVERNMENT COULD ESTABLISH UNDER THAT REGULATION GUILT OF

21    THE MISBRANDING OFFENSE.

22         WHERE WE PART COMPANY SUBSTANTIALLY, AND I HAVE TO

23    MAKE AN ISSUE OF IT BECAUSE THE ADMISSIONS WE MAKE IN COURT

24    MATTER AND HAVE RAMIFICATIONS BEYOND OUR GUILTY PLEA, WHERE WE

25    DISAGREE IS ON PARTICULARS, AND I KNOW MR. CHARTASH HAS A VERY

ANDRE G. ASHLEY, O.C.R.

1   DIFFERENT VIEW, BUT UNDER THE LAW THE GOVERNMENT COULD PROVE

2   AND WE READILY ADMIT THAT DURING THE TIME PERIOD CHARGED THE

3   MISBRANDING OFFENSE.

4           THE COURT:  THE MISBRANDING BEING THE UNDUE

5   GENERALITY IN THE LABELING?

6           MR. COWEN:  THAT I THINK IS A WAY OF DESCRIBING IT,

7   BUT IT'S REALLY THAT -- THE REASON I'M STRUGGLING IS THERE'S A

8   CIRCULARITY TO SOME OF THIS.  YOU'RE NOT ALLOWED TO PUT IN YOUR

9   LABEL DIRECTIONS FOR USES THAT ARE NOT APPROVED EVEN IF YOU

10  HAVE A LOT OF INFORMATION.  THAT ACTUALLY IS PART OF WHAT'S AT

11  THE HEART OF THAT DECLARATORY JUDGMENT ACTION THAT THE COMPANY

12  IS GIVING UP IS THAT YOU CAN'T COMMUNICATE TO DOCTORS ABOUT THE

13  OFF-LABEL USES EVEN THOUGH THE DOCTORS ARE TOTALLY PERMITTED

14  BY LAW TO PRESCRIBE OFF-LABEL.  THAT'S WHERE THE TENSION

15  ARISES.

16          SO THE MISBRANDING OFFENSE ITSELF IS A VERY LOW BAR.

17  WE ADMIT THAT WE HAVE FAILED THAT BAR AND THE GOVERNMENT CAN

18  PROVE THAT.  MUCH OF THE REST OF OUR DISAGREEMENT WOULD BE I

19  THINK VIEWED AS SURPLUSAGE BY THE COURT IF IT WERE ALL LAID OUT

20  BUT THE --

21          THE COURT:  WHEN YOU SAY "MUCH OF THE REST," ARE YOU

22  TALKING ABOUT THE EXTENT TO WHICH THE PRODUCT WAS USED FOR

23  PURPOSES OTHER THAN WHAT HAD BEEN APPROVED?

24          MR. COWEN:  WE WOULD PROBABLY DISAGREE ABOUT THE

25  PERCENTAGES, BUT I'M NOW TALKING ABOUT THE DESCRIPTIONS THAT

1  THE GOVERNMENT GIVES -- AND I DO APPRECIATE THAT MR. CHARTASH

2  LIMITED THE RHETORIC ABOUT THAT, I APPRECIATE THAT, BUT WE DO

3  NOT AGREE ABOUT HIS POINT ABOUT CERVICAL DYSTONIA.  WE DO NOT

4  AGREE THAT --

5          THE COURT:  WHEN YOU SAY "HIS POINT ABOUT CERVICAL

6  DYSTONIA," NOW APPARENTLY -- LET ME SEE IF I RECALL THIS

7  CORRECTLY.  THE DRUG WAS APPROVED FOR USE TO TREAT CERVICAL

8  DYSTONIA?

9          MR. COWEN:  RIGHT.

10         THE COURT:  THE FDA HAD APPROVED THAT?

11         MR. COWEN:  YES, INDEED, YOUR HONOR, BUT MR.

12 CHARTASH'S POINT -- I'M SURE HE WILL HATE THE WAY I

13 CHARACTERIZE IT, BUT HIS POINT IS THAT THE COMPANY USED THAT

14 APPROVED USE AND THEN TRIED TO DRIVE HEADACHE SALES THROUGH

15 THAT APPROVED USE.  WE DISAGREE.  WE JUST DISAGREE, AND IT'S

16 NOT NECESSARY FOR THE COURT TO REACH THAT.

17         WE DO AGREE THAT THEY CAN PROVE THE MISBRANDING

18 CHARGE.

19         THE COURT:  OKAY.  I THINK I UNDERSTAND WHAT YOU'RE

20 SAYING, AND YOU'RE SAYING THAT TO CONVICT ALLERGAN IN THIS

21 CASE, THE GOVERNMENT WOULD NOT HAVE TO PROVE AT TRIAL THAT

22 ALLERGAN PROMOTED THE USE OF THE DRUG FOR OFF-LABEL PURPOSES

23 BEHIND THE SCENES, SO TO SPEAK.

24         ALL THAT WOULD HAVE TO BE PROVEN WAS THAT THE DRUG

25 WAS MISBRANDED IN THE SENSE THAT THE DIRECTIONS ON THE LABEL OR

1  THE INSTRUCTIONS ON THE LABEL WERE GENERAL ENOUGH SO THAT

2  SOMEONE I GUESS LIKE A DOCTOR MIGHT SAY HE WAS CONFUSED.

3         MR. COWEN:  I THINK THAT'S CORRECT, YOUR HONOR.

4         THE COURT:  OKAY.  DOES THAT SATISFY YOU, MR.

5  CHARTASH?

6         MR. CHARTASH:  YOUR HONOR, THERE IS MUCH TO SAY ABOUT

7  THIS, BUT I UNDERSTAND WHERE YOUR HONOR IS COMING FROM.  I

8  THINK THERE IS A SUFFICIENT FACTUAL BASIS.  THE PROMOTION IS

9  ESSENTIAL TO THE GOVERNMENT, AND NOTWITHSTANDING WHAT MR. COWEN

10 SAID, ALL OF THE THINGS THAT ARE ALLEGED THE GOVERNMENT WOULD

11 SAY PROVES WHAT THE REAL INTENT AND WHAT THE INTENDED USE OF

12 BOTOX WAS FOR THE HEADACHE, FOR THE PAIN, FOR JUVENILE CEREBRAL

13 PAISLEY, FOR SPASTICITY, BUT WE AGREE THAT THERE'S ENOUGH

14 FACTUAL BASIS.

15        WE DISAGREE ABOUT THE FACTS IN TERMS OF WHAT

16 DIFFERENT SETS OF FACTS WOULD PROVE DIFFERENT THINGS, BUT IN

17 TERMS OF WHAT YOUR HONOR ASKED, IT'S NOT ONLY THAT THE LABELING

18 IN GENERAL -- THE LABELING DEALS WITH THE ON-LABEL USES.  SO IT

19 DOESN'T HAVE ANYTHING TO DO IN THE SENSE OF SPECIFIC

20 INDICATIONS FOR THE OFF-LABEL USES.  SO IT DOESN'T RELATE

21 DIRECTLY.

22        I MEAN IT TALKS ABOUT WHAT BOTOX IS.  OBVIOUSLY THAT

23 TRANSCENDS EVERYTHING, BUT AS TO SPECIFICS, IT WOULDN'T ADDRESS

24 THAT.  IT ONLY ADDRESSES THE ON-LABEL USES, AND THAT'S WHY

25 THERE'S NOT ADEQUATE DIRECTIONS FOR USE.

ANDRE G. ASHLEY, O.C.R.

1        THE COURT:  OKAY.  MR. GESTEN, YOU HEARD MR. CHARTASH

2  SAY WHAT THE GOVERNMENT'S EVIDENCE WOULD PROVE AT TRIAL AND

3  THEN YOU HEARD MR. COWEN'S WITH HIS MODIFICATIONS.  DO YOU

4  AGREE THAT WHAT MR. CHARTASH SAID WITH THE MODIFICATIONS IS

5  TRUE AND CORRECT?

6        MR. GESTEN:  YOUR HONOR, I AGREE THAT WE BELIEVE THAT

7  THE GOVERNMENT COULD PROVE THE ELEMENTS OF THE MISBRANDING

8  CLAIM, YES.

9        THE COURT:  ANYTHING ELSE?

10        MR. CHARTASH:  I MEAN I DON'T WANT TO BE A TICKLER.

11  THAT'S A LITTLE "ALFORDISK" TO BELIEVE THAT THE GOVERNMENT

12  COULD PROVE IT.  I THINK -- I DON'T THINK THAT'S EXACTLY WHAT

13  HE MEANT.  I MEAN I'M NOT SUGGESTING THAT I KNOW WHAT YOU MEAN,

14  BUT IT'S ESSENTIAL THAT THE GOVERNMENT PROVE THAT THEY

15  COMMITTED THE CRIME.  I THINK THAT'S WHAT WE'RE LOOKING FOR.

16        MR. COWEN:  THAT IS CORRECT.  THIS IS NOT AN ALFORD

17  PLEA.  WE'RE NOT TRYING TO DO THAT.  WE UNDERSTAND THAT.  WE

18  AGREE THE GOVERNMENT COULD PROVE THE MISBRANDING OFFENSE,

19  THAT'S CORRECT.

20        THE COURT:  MR. GESTEN, DOES ALLERGAN PLEAD GUILTY IN

21  THIS CASE?

22        MR. GESTEN:  YES, YOUR HONOR.

23        THE COURT:  OKAY.  NOW WITH RESPECT TO THE PROFFER OF

24  THE GUILTY PLEA, IS THERE ANYTHING FURTHER BEFORE I RULE ON

25  THAT?

ANDRE G. ASHLEY, O.C.R.

1          MR. CHARTASH:  NOTHING FROM THE GOVERNMENT, YOUR

2  HONOR.

3          MR. COWEN:  MAY I HAVE JUST ONE MOMENT, PLEASE?

4          (PAUSE IN THE PROCEEDINGS.)

5          MR. COWEN:  NO, YOUR HONOR.  THANK YOU.

6          MR. CHARTASH:  IF I MAY, WE HAVE NOT GONE OVER --

7  YOUR HONOR MAY DO IT AFTERWARDS -- GONE OVER SOME OF THE

8  SPECIFICS ABOUT THE PLEA AGREEMENT ITSELF.  WHETHER THIS IS

9  THE APPROPRIATE TIME OR SHOULD WE WAIT?

10          THE COURT:  WELL, AS I SAID, I HAVE READ THE PLEA

11  AGREEMENT IN ITS ENTIRETY.  IF YOU WISH TO PUBLISH IT IN OPEN

12  COURT, YOU MAY DO SO.

13          MR. CHARTASH:  YOUR HONOR, IF YOU DON'T BELIEVE IT'S

14  NECESSARY, BUT THERE IS AN APPEAL WAIVER.  I KNOW YOUR HONOR

15  WILL SPEAK TO THAT.  I WANT TO MAKE SURE THAT IT IS

16  ACKNOWLEDGED THAT THERE IS AN APPEAL WAIVER IN THE PLEA

17  AGREEMENT THAT WAIVES CERTAIN OF ALLERGAN'S RIGHTS REGARDING

18  APPEAL.

19          THE COURT:  THAT'S CORRECT.  DO YOU UNDERSTAND THAT,

20  MR. GESTEN?

21          MR. GESTEN:  YES, I DO, YOUR HONOR.

22          THE COURT:  THE ONLY WAY YOU COULD APPEAL WOULD BE IF

23  I WERE TO GIVE ALLERGAN A SENTENCE OTHER THAN WHAT IS CALLED

24  FOR IN THE PLEA AGREEMENT OR IF THE GOVERNMENT WERE TO APPEAL.

25  DO YOU UNDERSTAND THAT?

ANDRE G. ASHLEY, O.C.R.

1           MR. GESTEN:  YES, YOUR HONOR.

2           THE COURT:  DO YOU WANT TO GO OVER THE HIGH POINTS OF

3    THE PLEA AGREEMENT?  WHY DON'T YOU DO THAT?

4           MR. CHARTASH:  SURE.  YOUR HONOR, WE HAVE THE PLEA

5    AGREEMENT WHICH, FIRST, YOUR HONOR, THE DEFENDANT ALLERGAN

6    ADMITS THAT ITS IN FACT PLEADING GUILTY BECAUSE THEY ARE IN

7    FACT GUILTY.

8           THERE'S AN ACKNOWLEDGMENT OF RIGHTS, MANY OF WHICH

9    YOU HAVE GONE OVER ALREADY.  THERE'S ALSO AN ACKNOWLEDGMENT OF

10   THE PENALTIES WHICH IN FACT YOU WENT OVER, AND, YOUR HONOR,

11   THAT THE DEFENDANT AND THE UNITED STATES FOR THE NORTHERN

12   DISTRICT OF GEORGIA SUBJECT TO APPROVAL OF THIS HAVE AGREED

13   UPON THIS PLEA AGREEMENT, AND THAT, ONE, NO ADDITIONAL CHARGES

14   WILL BE BROUGHT AGAINST ALLERGAN.  THIS IS NOT -- AS RELATES TO

15   THE SPECIFICS IDENTIFIED IN PARAGRAPH 5, NOT ONLY THE UNITED

16   STATES ATTORNEY'S OFFICE FOR THE NORTHERN DISTRICT OF GEORGIA,

17   WE HAVE THE OTHER 93 JUDICIAL DISTRICTS ALSO CONSENTING TO THAT

18   AS WELL.

19          IT IDENTIFIES SPECIFICALLY THAT ALLERGAN'S PARENT --

20   IT'S PRESENT OR FORMER PARENTS, AFFILIATES AND SUCCESSORS AND

21   ASSIGNS WILL NOT BE CHARGED AS IT IDENTIFIES THE SPECIFIC

22   CONDUCT IN A AND B OF PARAGRAPH 5.

23          THERE'S A STATUTE OF LIMITATIONS WAIVER IF FOR SOME

24   REASON THIS PLEA AGREEMENT DOES FALL THROUGH.  THERE'S A FOUR-

25   YEAR WAIVER AS WELL FROM ALLERGAN.  TO THE EXTENT, YOUR HONOR,

1    THAT ANY GUIDELINES ARE APPROPRIATE, IT WOULD BE THE 2009

2    GUIDELINES, YOUR HONOR.

3              IT THEN IDENTIFIES, YOUR HONOR, THE PLEA AGREEMENT,

4    THE RECOMMENDED SENTENCE.  YOUR HONOR, THE PARTIES, AND I'M

5    HOPEFUL THAT YOU'LL HEAR MORE OF THIS, THE PARTIES NEGOTIATED

6    LONG AND HARD OVER THIS.  AS YOU CAN TELL, YOUR HONOR, THERE

7    WAS MUCH DISAGREEMENT ABOUT MUCH -- ABOUT EVERYTHING BASICALLY

8    RELATED TO THIS CASE.  SO WE NEGOTIATED LONG AND HARD OVER

9    THIS.

10             SO THERE'S 375 MILLION DOLLARS BROKEN DOWN TO 350

11   MILLION DOLLARS FOR CRIMINAL FINE, 25 MILLION DOLLARS, YOUR

12   HONOR, WHICH WE APPLY TO SUBSTITUTE ASSETS.  IT THEN FURTHER

13   IDENTIFIES THE FORFEITURE.  YOUR HONOR, ALLERGAN HAS AGREED TO

14   PAY THE MANDATORY ASSESSMENT OF 125 DOLLARS.

15             IN LIGHT OF THE CIVIL SETTLEMENT, YOUR HONOR, WHICH

16   IS 225 MILLION DOLLARS, BOTH PARTIES HAVE AGREED TO RECOMMEND

17   OR CERTAINLY THE GOVERNMENT HAS AGREED TO RECOMMEND THAT NO

18   RESTITUTION BE ORDERED.  IT'S WAY TOO COMPLICATED.  MUCH OF IT

19   HAS BEEN COVERED BY THE CIVIL SETTLEMENT.

20             WE ALSO HAVE IN OUR SENTENCING MEMO, YOUR HONOR, IT

21   TALKS ABOUT THAT SOMEWHAT WHY RESTITUTION WE BELIEVE IS NOT

22   APPROPRIATE IN THIS CASE.

23             ALSO, YOUR HONOR, THERE WAS A CORPORATE INTEGRITY

24   AGREEMENT THAT HAS BEEN EXECUTED CONTEMPORANEOUS WITH THIS PLEA

25   AGREEMENT, AND BECAUSE OF THE CIA, WE BELIEVE THAT PROBATION IS

ANDRE G. ASHLEY, O.C.R.

1   REALLY UNNECESSARY, AND HHS DOES THIS SORT OF STUFF ALL THE

2   TIME, AND THEY'RE THE APPROPRIATE BODY TO IN FACT DO THIS.  SO

3   THAT'S WHY WE AGREED TO THAT.

4            THE GOVERNMENT AND THE DEFENDANT UNDERSTAND THAT YOUR

5   HONOR HAS DISCRETION TO ACCEPT OR REJECT THE PLEA AS YOUR HONOR

6   FEELS APPROPRIATE.  THERE'S A PARAGRAPH ABOUT WHAT HAPPENS IF

7   YOUR HONOR DIDN'T ACCEPT IT.  OF COURSE, THE GOVERNMENT

8   RESERVES THE RIGHT TO INFORM THE COURT AND SHOULD IT BE THE

9   PROBATION OFFICER OF ALL THE FACTS AND CIRCUMSTANCES.  ALLERGAN

10  ALWAYS HAS THAT RIGHT.

11           AGAIN IT TALKS ABOUT THE SPECIAL ASSESSMENT.  HERE'S

12  THE LIMITED WAIVER THAT YOUR HONOR HAS ALREADY TALKED ABOUT.

13  IT TALKS ABOUT THE VOLUNTARY PLEA.  PROBATION NOT BEING BOUND

14  BY THIS AGREEMENT SHOULD WE GO THAT WAY, YOUR HONOR, AND AGAIN

15  IT TALKS ABOUT IF THERE IS A MATERIAL BREACH OF THE PLEA

16  AGREEMENT, WHAT WOULD HAPPEN AS A RESULT OF THAT VIOLATION,

17  AND --

18           THE COURT:  AND THE FAILURE TO FILE THE DISMISSAL IN

19  D.C. AND THE FINALIZED DISMISSAL IN ATLANTA WOULD BE MATERIAL

20  BREACHES?

21           MR. CHARTASH:  YES, YOUR HONOR, CERTAINLY THE

22  GOVERNMENT WOULD TAKE THAT POSITION, AND THEN IT TALKS ABOUT

23  THE CORPORATE AUTHORIZATION AS WELL, AND WE'VE ALREADY EXECUTED

24  THAT.

25           SO THAT GENERALLY, YOUR HONOR, IS A BRIEF SUMMARY AND

ANDRE G. ASHLEY, O.C.R.

1  HIGHLIGHTS OF WHAT THE PLEA IS.

2          THE COURT:  ANY CORRECTIONS?

3          MR. COWEN:  NO, YOUR HONOR.

4          THE COURT:  ALL RIGHT.  NOW ANYTHING FURTHER BEFORE I

5  RULE ON THIS PLEA?

6          MR. CHARTASH:  NOTHING FURTHER FROM THE GOVERNMENT.

7          MR. COWEN:  NO, YOUR HONOR.

8          THE COURT:  I FIND BASED ON MY QUESTIONING OF COUNSEL

9  AND MR. GESTEN THAT THIS GUILTY PLEA IS TENDERED FREELY AND

10  VOLUNTARILY AND THAT THERE IS A FACTUAL BASIS FOR IT, AND,

11  THEREFORE, I ACCEPT IT.

12          NOW THAT BEING THE CASE, I WAS AWARE OF THE FACT THAT

13  YOU ALL WANTED TO GO AHEAD WITH THE SENTENCE TODAY.

14          MR. CHARTASH:  YES, YOUR HONOR.

15          THE COURT:  AND THAT BOTH SIDES WANTED TO WAIVE THE

16  REQUIREMENT OF THE PRESENTENCE REPORT; IS THAT CORRECT?

17          MR. CHARTASH:  YES, YOUR HONOR.

18          MR. COWEN:  THAT IS CORRECT, YOUR HONOR.

19          THE COURT:  I'M PREPARED TO GO AHEAD AND PROCEED WITH

20  THAT.  ANYTHING ELSE BEFORE WE DO THAT?

21          MR. CHARTASH:  IN THE SENSE OF YOUR IMPOSING

22  SENTENCE?

23          THE COURT:  YES.

24          MR. CHARTASH:  THE ONLY THING WE WOULD SAY, YOUR

25  HONOR, BRIEFLY IS THAT WE HAVE SUBMITTED THE SENTENCING MEMO.


                    ANDRE G. ASHLEY, O.C.R.

1   IT TALKS ABOUT THE DETAIL FACTS.  IT TALKS ABOUT THAT THIS HAS

2   BEEN -- THIS IS A VERY COMPLICATED CASE, YOUR HONOR.  THE

3   SENTENCE, THE AGREED UPON AMOUNT HAS BEEN, AS I MENTIONED, HARD

4   FOUGHT AND A LOT OF COMPLICATED FACTS AND COMPLICATED FACTORS

5   THAT WE HAVE CONSIDERED BACK AND FORTH.

6          WE DO HAVE ALSO, YOUR HONOR, THE -- IF I MAY, THANK

7   YOU, MS. GOSS, THE CONSENT AND PRELIMINARY ORDER OF FORFEITURE

8   THAT YOUR HONOR WILL HAVE TO SIGN.  IT HAS MR. COWEN'S

9   SIGNATURES; IS THAT YOUR SIGNATURE?

10          MR. COWEN:  YES, IT IS.

11          MR. CHARTASH:  MS. GOSS, THE HEAD OF OUR ASSET

12   FORFEITURE, SO IF I MAY TENDER THAT.  THANK YOU.  AND THAT, YOU

13   KNOW, BASED UPON THAT, WE BELIEVE THIS IS A FAIR, JUST AND

14   REASONABLE SENTENCE.

15          THE COURT:  OKAY.  THANK YOU, COUNSEL.  MR. GESTEN,

16   I'LL DIRECT THESE REMARKS TO YOU AS THE CORPORATE

17   REPRESENTATIVE.

18          THE SENTENCE OF THE COURT IN THIS CASE IS AS FOLLOWS:

19   ALLERGAN SHALL PAY THE SUM OF 375 MILLION DOLLARS, 350 MILLION

20   OF WHICH SHALL CONSTITUTE A CRIMINAL FINE AND 25 MILLION

21   DOLLARS OF WHICH WILL BE APPLIED AS SUBSTITUTE ASSETS TO SUPPLY

22   THE FORFEITURE OBLIGATION.  THESE AMOUNTS SHALL BE PAID WITHIN

23   TEN BUSINESS DAYS OF TODAY.

24          IN LIGHT OF THE CORPORATE INTEGRITY AGREEMENT, THE

25   PROVISIONS OF THAT AGREEMENT, NO PERIOD OF PROBATION WILL BE

1  REQUIRED IN THIS CASE.

2          IN LIGHT OF THE PROVISIONS OF THE CIVIL SETTLEMENT

3  AGREEMENT REQUIRING THE PAYMENT OF 225 MILLION DOLLARS PLUS

4  CERTAIN ACCRUED INTEREST TO THE UNITED STATES AND THE MEDICAID

5  PARTICIPATING STATES, NO RESTITUTION SHALL BE REQUIRED AS PART

6  OF THIS SENTENCE.  THE COURT IMPOSES A SPECIAL ASSESSMENT OF

7  125 DOLLARS.

8          ANY EXCEPTIONS, COUNSEL?

9          MR. CHARTASH:  NOTHING FROM THE GOVERNMENT.  YOUR

10  HONOR, I JUST WANT -- THERE MAY BE A RIGHT TO ALLOCUTE.  I'M

11  NOT SURE IF THEY WANT TO EXERCISE THAT RIGHT, YOUR HONOR, BY

12  ALLERGAN.

13          MR. COWEN:  EVERYTHING WE'VE HAD TO SAY WE HAVE SAID

14  EITHER IN OUR PAPERS OR TO THE COURT, AND WE HAVE NO

15  EXCEPTIONS.

16          THE COURT:  OKAY.  THANK YOU.

17          (PROCEEDINGS CONCLUDED.)

18

19

20

21

22

23

24

25

ANDRE G. ASHLEY, O.C.R.

1
2                      C-E-R-T-I-F-I-C-A-T-E
3
4    UNITED STATES OF AMERICA
5    NORTHERN DISTRICT OF GEORGIA
6
7            I, ANDRE G. ASHLEY, DO HEREBY CERTIFY THAT I AM A
8    U.S. DISTRICT REPORTER FOR THE NORTHERN DISTRICT OF GEORGIA,
9    THAT I REPORTED THE FOREGOING AND THE SAME IS A TRUE AND
10   ACCURATE TRANSCRIPTION OF MY MACHINE SHORTHAND NOTES AS TAKEN
11   AFORESAID.
12           IN TESTIMONY WHEREOF I HAVE HEREUNTO SET MY HAND ON
13       THIS 6TH DAY OF OCTOBER, 2010.
14
15
16
17
18
19                               ANDRE G. ASHLEY
                                 OFFICIAL COURT REPORTER
20                               NORTHERN DISTRICT OF GEORGIA
21
22
23
24
25


                        ANDRE G. ASHLEY, O.C.R.